[Cite as *State v. Middlebrook*, 2022-Ohio-2605.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29257 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1726 |
| | : | |
| ANTHONY MIDDLEBROOK | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of July, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Anthony Middlebrook appeals from his conviction on one count of raping a child under 10 years of age, a first-degree felony.

{¶ 2} In his sole assignment of error, Middlebrook contends his conviction was against the manifest weight of the evidence. He asserts that his wife's eyewitness testimony was not credible. He also points out that he denied the incident.

{¶ 3} We conclude that Middlebrook's conviction was not against the weight of the evidence. In addition to the testimony of his wife, who saw the incident, the State presented other compelling evidence, including DNA evidence and Middlebrook's own incriminating statements. Accordingly, the trial court's judgment will be affirmed.

**I. Background**

{¶ 4} The charge against Middlebrook stemmed from a complaint about his performing oral sex on his three-year-old daughter. At trial, Middlebrook's wife testified that she walked into their house on May 25, 2019, while participating in a neighborhood cookout and saw him and the child in the master bedroom. The child was propped up on a pillow with her pants and underwear off and her legs in the air in a "V" position. Middlebrook was on his stomach with his head between the child's legs.

{¶ 5} Middlebrook's wife yelled out the window for a neighbor to call 911 because he was raping their daughter. One neighbor called 911 while another neighbor, Brooklyn LeMaster, ran inside to help. LeMaster picked up the child, who was crying and trying to pull up her shorts. The child told LeMaster that Middlebrook had kissed her "peaches"

and pointed to her private area. The child expressed concern that Middlebrook was going to be mad and that she was going to get him in trouble. The child later pointed to her tongue and told a detective that Middlebrook had kissed her stomach and "butt."

{¶ 6} On the night of the incident, the child underwent a medical examination and various parts of her body were swabbed. The samples were tested, and Middlebrook's DNA was found on swabs taken from the child's exterior genitalia, perianal area, and inner thigh. Several days after the incident, forensic interviewer Ashley Back spoke with the child, who again stated that Middlebrook had kissed her "butt" with his tongue. While making the statement, the child pointed between her legs near her vagina. The child reported that she had asked Middlebrook to stop. She described feeling his facial hair and his tongue. She also stomped her feet during the interview and said Middlebrook made her "mad, mad, mad."

{¶ 7} When police arrested Middlebrook, he claimed that he merely had been changing the child's diaper or panties. At the police station, detective Elizabeth Alley attempted an interview but terminated it out of concern that Middlebrook was intoxicated. Three days later, she did conduct the interview. Middlebrook claimed that he had been drinking and playing chess at a friend's house before going home and going to bed. He professed not to remember having his face between the child's legs. Eventually, however, Middlebrook acknowledged that the child had no reason to lie and that what she alleged was true. He told the detective that the "pieces were coming together" in his mind and that he actually did what the child claimed. He stated that he was sorry. He also admitted that his DNA would be on the child's vagina and that he thought the child's DNA would

be in his mouth. Although the child's DNA was not found in Middlebrook's mouth, the State presented testimony that saliva likely would wash away foreign DNA from a person's mouth. The State also presented testimony about Middlebrook's being seen "swishing" water around in his mouth and spitting it out in a jail restroom after his arrest.

{¶ 8} Following the State's case, Middlebrook testified in his own defense. He explained that he had been drinking and playing chess at a friend's house. He then returned home and fixed something to eat for himself and his daughter. After doing so, he fell asleep in bed while watching television. He awoke to find the child straddling him and bouncing up and down without any pants. Middlebrook tried to arise, and the child fell to his side just as his wife entered the room and saw what was happening. Middlebrook claimed his wife and two men proceeded to beat him and knock him unconscious. With regard to his incriminating statements to the detective, Middlebrook characterized them as a misunderstanding. He also suggested that he was incoherent due to a head injury caused by his wife and the two men beating him. Middlebrook insisted that he did not engage in oral sex with his child.

{¶ 9} Based on the evidence presented, a jury found Middlebrook guilty. The trial court imposed a sentence of 15 years to life in prison and designated him a Tier III sex offender. This appeal followed.

## II. Analysis

{¶ 10} When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in

resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "[T]he cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} With the foregoing standards in mind, we conclude that Middlebrook's conviction was not against the weight of the evidence. At trial, he denied engaging in oral sex with his daughter, but his testimony described a seemingly unlikely scenario. Prior to trial, he gave other varying and inconsistent accounts of what had occurred. At one point, he effectively admitted to the detective that he had engaged in the charged conduct. Middlebrook's incriminating statements to the detective were consistent with the child's allegations, the eyewitness testimony of his wife, and the State's DNA evidence. Having reviewed the record, we do not find that the jury clearly lost its way in disbelieving Middlebrook's trial testimony and finding him guilty. This is not a case in which the evidence weighs heavily against the conviction.

## III. Conclusion

{¶ 12} The assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Robert Alan Brenner
Hon. Dennis J. Adkins